Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,710-KA
No, 55,711-KA
*(Consolidated Cases)*

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                  Appellee

versus

DERRICK D. SAVAGE                                   Appellant

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Tensas, Louisiana
Trial Court No. 98,814B and 103,970B

Honorable Laurie R. Brister, Judge

* * * * *

DMITRIC IAN BURNES                          Counsel for Appellant

DERRICK D. SAVAGE                           Pro Se

JAMES EDWARD PAXTON                         Counsel for Appellee
District Attorney

LINDA LEE KINCAID WATSON
JOHN D. CRIGLER, JR.
BRADLEY T. SLOANE
Assistant District Attorneys

* * * * *

Before STONE, THOMPSON, and ROBINSON, JJ.

STONE, J., dissents with written reasons.

**THOMPSON, J.**

Derrick D. Savage was convicted of second-degree murder[1] and conspiracy to commit second degree murder[2] by an unknown number of jurors, after the trial court gave an erroneous instruction regarding the number of jurors required to convict. After reaching its verdict, the jury was not polled to confirm unanimity. Savage received consecutive sentences of life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence, and 30 years at hard labor for each respective charge and now appeals.

In *Ramos v. Louisiana*, 590 U.S. 83, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020), the United States Supreme Court clarified the requirement of a unanimous jury for a conviction of serious crimes. Savage asserts that the erroneous jury instruction and the failure of the record to reflect that the jury was unanimous requires that his convictions be vacated. In almost identical facts in *State v. Hicks*, 55,010 (La. App. 2 Cir. 5/10/23), 361 So. 3d 1213, the Louisiana Supreme Court ordered the matter to be remanded to the trial court to conduct further proceedings to ascertain whether the jury's guilty verdict was unanimous. Accordingly, we remand this matter to the trial court to undertake such efforts necessary to determine from each individual juror whether the jury's verdicts to convict Savage were, in fact, unanimous.

## FACTS AND PROCEDURAL HISTORY

On June 5, 2017, Sara Miles reported her son, Ricardo Miles ("Miles"), missing to the Tensas Parish Sheriff's Office ("sheriff's office"), telling officers he had been missing since June 2, 2017 and was last seen

---

[1] La R.S. 14:30.1.
[2] La. R.S. 14:26.

with his co-worker, Derrick Savage ("Savage").  At the time, Savage, Miles, and John Fussel, Sr. ("Fussel"), all worked together at Pitts Farms in Tensas Parish.

Witnesses reported that Miles was fishing with his son and grandmother in Newellton, Louisiana on the day of his disappearance and that Savage picked him up in a white truck.  The sheriff's office obtained video surveillance from a local convenience store that showed Miles getting picked up by Savage in a white truck.  On June 7, 2017, Savage was brought into the sheriff's office for questioning regarding Miles's disappearance.  Savage admitted to officers that he picked up Miles the day he disappeared.  However, Savage stated that they purchased beer and rode around for a short time before he dropped Miles off at an intersection near Saint Joseph, Louisiana.  Savage explained that a small white car picked Miles up, and he presumed that the driver of that vehicle was Miles's sister.  He then stated that he had not seen Miles since dropping him off at the intersection.

During the investigation, officers obtained Savage's and Miles's telephone records from AT&T, which showed them both near Crooked Bayou Road and the Hurricane Lodge at approximately 7:42 p.m. on the day of Miles's disappearance.  During the search of the area, officers located a track hoe but were unable to locate Miles at that time. The investigation into Miles's disappearance continued as officers searched for Miles in the area in which he was last shown to be located, to no avail.

On May 31, 2018, Dana McDaniel ("McDaniel"), Savage's romantic partner, spoke to officers regarding the disappearance of Miles.  McDaniel stated that on June 2, 2017, Savage and Miles picked her up from the Hurricane Lodge.  She explained that they drove around drinking beer until

Savage drove them to an isolated area off Crooked Bayou Road. According to McDaniel, when they arrived, Fussel was already there, standing on the tracks of a track hoe excavator. At this point, McDaniel explained that Savage exited the vehicle and directed Miles out of the vehicle to look at an alligator. When Miles exited the vehicle, McDaniel stated that Savage pulled a gun from his waistband and shot Miles in the back of the head. After Savage shot Miles, McDaniel saw Savage and Fussel laugh and shake hands. McDaniel also expressed that Miles did not show any signs of life after that point. Savage then returned to the vehicle with blood spatter on his shirt and drove her back to the Hurricane Lodge.

When Savage dropped her off, he told her that if she ever told anyone what occurred, he would harm her and her family. Savage then informed her that he was going to return to the scene to help dispose of the body. McDaniel explained to officers that a couple of hours later, Savage returned to the lodge sweaty, wet, and covered in mud. Savage then told McDaniel that he had disposed of the body where he had previously taken her to see wildflowers. Regarding a possible motive for the murder, McDaniel explained that Savage had become extremely paranoid and believed that either Miles or Fussel was working with the authorities to have him arrested for selling drugs.

On June 27, 2018, officers arrested Fussel for possession of methamphetamines and multiple traffic violations. Believing that Fussel was under the influence of alcohol or narcotics at the time of his arrest, officers declined to interview him regarding the disappearance of Miles. Several days later, on July 2, 2018, Fussel was interviewed by law enforcement about Miles's disappearance. During the interrogation, Fussel

3

volunteered to take officers to the location of Miles's remains. Fussel led officers to an area near Crooked Bayou Road, which is the same area Miles's and Savage's cellphone data placed them on the day of Miles's disappearance. Upon arriving at the scene, Fussel collapsed against the police car and began to cry. Shortly thereafter, Fussel requested an attorney and was transported back to the sheriff's office. Officers searched the area but were still unable to find Miles's remains.

The mystery of the location of Miles's remains was resolved on September 21, 2018, when Fred Newcomb, a timber cruiser, discovered a human skull while evaluating timber near Sawmill Hunting Club. Afterward, officers discovered additional human remains in the same vicinity. The Combined DNA Index System ("CODIS") later identified the skeletal remains as those of Miles.

Savage was charged by bill of indictment and bill of information with second degree murder and conspiracy to commit second degree murder. His jury trial began on October 10, 2022, and at trial, the district court provided the jury with the following erroneous instruction: "the law requires that at least ten of you must agree on the same verdict before you can arrive at a verdict." At the conclusion of the trial, Savage was found guilty of one count of second-degree murder and one count of conspiracy to commit second-degree murder. However, after reaching its verdict, the jury was never polled; neither defense counsel, the state, nor the judge preserved on the record each individual juror's guilty verdict. On January 5, 2023, Savage was sentenced to consecutive sentences of life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence for

the second-degree murder conviction and 30 years at hard labor for the conspiracy to commit second degree murder conviction.

On January 17, 2023, defense counsel filed a motion for appeal with an order, and the trial court signed the order on January 23, 2023. Months later, on September 23, 2023, the State filed a motion to supplement the record with an affidavit from David Neuroth ("Mr. Neuroth"), the jury foreman, in which he swore and affirmed that the jury verdict was unanimous. A hearing on the matter was held on December 14, 2023, and during the hearing, the State addressed the issue of unanimity and argued that the affidavit from the jury foreman would comply with *Ramos, supra*. Defense counsel objected to the hearing and argued that the district court did not have jurisdiction to hold a hearing because the order of appeal had been signed months earlier, on January 23, 2023. The trial court overruled the defense objection and found that it had jurisdiction to hold a hearing pursuant to La. C. Cr. P. art. 916(2).[3] At the hearing, the trial court allowed into evidence an affidavit from Mr. Neuroth, which stated that "all members of the jury voted unanimously on both counts charged by the bill of indictment," in an attempt to correct the deficiency in the record regarding the unanimity of the jury. Savage now appeals.

---

[3] La. C. Cr. P. art. 961(2) provides:
> The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction to take any action except as otherwise provided by law and to:
> (2) Correct an error or deficiency in the record.

DISCUSSION

On appeal, Savage asserts several assignments of error[4] related to the improper instruction to the jury, the failure to poll the jury, and the attempts by the trial court to remedy the deficiency by conducting a hearing and introducing the jury foreman's affidavit. Savage's assignments of error that relate to the issues with the jury provide (verbatim):

> **Assignment of Error Number One: The district court gave improper instructions to the jury on the law when it said that a verdict of guilty could be arrived at by a vote of 10 of the 12 jurors.**

> **Assignment of Error Number Two: The district court failed to poll the jury as to their verdict.**

> **Assignment of Error Number Three:  The district court was without jurisdiction to hold a hearing on December 14, 2023, many months after the order granting an appeal was signed and filed in the record.**

> **Assignment of Error Number Four:  The post-trial affidavit of the foreman of the jury submitted by the State at the December 14, 2023 hearing is insufficient to substitute for polling of the jury.**

The requirement of a unanimous jury verdict was resolved in *Ramos, supra,* when the United States Supreme Court provided the United States Constitution requires a unanimous verdict to convict a defendant of a serious offense. As such, since April 20, 2020, it is required that Louisiana juries be unanimous in their verdict. The record must clearly show that each individual juror's vote agrees with the verdict of the whole jury, and thus, that the verdict is in fact unanimous. Until such time the legislature deems it necessary to require each juror to sign the verdict form,[5] only polling the

---

[4] Savage also asserts three assignments of error related to evidentiary rulings by the trial court. Review of those assignments of error are pretermitted on this appeal, pending resolution of the issue of unanimity of the jury verdict.

[5] La. C. Cr. P. art. 810 provides: "When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the

jurors to confirm the unanimity of the jury's verdict can accomplish this threshold requirement for a conviction of a serious offense.

This court has previously been confronted with an almost identical factual scenario from the same trial court in *Hicks*, 361 So. 3d 1213. In that case, this Court held that the trial court's error in instructing the jury that ten of the 12 jurors were needed to reach a guilty verdict was not harmless error. The jury was instructed on at least two separate occasions, by the trial court and defense counsel, that only ten jurors were required to reach a verdict. Additionally, neither the State nor defense counsel requested that the jury be polled, so there was no indication that jury's verdict was unanimous. This Court vacated Hicks's conviction and sentence and remanded the case for a new trial, concerned with the challenges of reassembling the jury to make further inquiry into the unanimity of the verdict rendered at trial.

The Louisiana Supreme Court, in a *per curiam* opinion, granted the State's *writ of certiorari*, and reversed this Court's holding. The Louisiana Supreme Court's opinion provided:

> The United States Supreme Court determined in *Ramos v. Louisiana*, 590 U.S. [83], 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020), that the Sixth Amendment right to jury trial, as incorporated against the States by way of the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense. Here, in a trial conducted after *Ramos* was decided, the district court instructed jurors that they could reach a verdict by 10-2 vote. However, jurors were not polled and it is not known whether the verdict was unanimous. The erroneous jury instruction alone does not constitute a structural error and defendant must show he suffered harm from it before the conviction will be reversed. *See generally State v. Hongo*, 96-2060, p. 4 (La. 12/02/97), 706 So.2d 419, 421; *see also Weaver v. Massachusetts*, 582 U.S. 286, 137 S. Ct. 1899, 198 L.Ed.2d 420 (2017). Accordingly, we grant the State's application and reverse the court of appeal's decision, which set

---

jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury."

> aside the jury's verdict and remanded for a new trial. We reinstate the verdict and **remand to the district court, which is ordered to conduct further proceedings to ascertain whether the verdict was unanimous**. *See generally State v. Norman*, 2020-109 (La. 7/2/20), 297 So.3d 738 (per curiam). Thereafter, if the trial court finds no error or that any error was harmless, defendant can appeal that ruling. (Emphasis added.)

*State v. Hicks*, 23-00969 (La. 2/6/24), 378 So. 3d 743.

Accordingly, we find we are bound by the Louisiana Supreme Court's instruction to remand for the trial court to conduct further proceedings to ascertain whether the verdict was unanimous. We therefore find that Savage's first assignment of error has merit.

This Court also noted in *Hicks*, 361 So. 3d 1213, that while it is not incumbent upon either the State or defense counsel to poll the jury, such measures would have inevitably clarified any potential deficiencies in the jury verdict, especially considering the trial court's erroneous jury instruction. We pretermit consideration of Savage's second assignment of error, because the issue of an erroneous jury instruction cannot be considered until such time as the unanimity of the jury's verdict has been confirmed. As the Louisiana Supreme Court noted, the erroneous jury instruction alone does not constitute a structural error; a defendant must show he suffered harm from it before the conviction will be reversed. *Hicks,* 378 So. 3d 743.

While we do not find that the district court erred by not polling the jury, *per se*, we do agree with Savage's third assignment of error, that the trial court did not have jurisdiction to conduct a hearing on December 14, 2023, while the matter was on appeal to this court. While La. C. Cr. P. art. 916(2) allows the trial court to take action to correct an error or deficiency in the record, the error in this case was not merely ministerial. The trial court

did not have jurisdiction to conduct additional proceedings to determine the unanimity of the jury once the motion for the appeal had been granted. An assertion by the jury foreman as to the unanimity of the jury's verdict would not have been sufficient during the trial; likewise, a post-trial assertion cannot replace the crucial factual confirmation by each individual juror.

We also agree with Savage's fourth assignment of error and find that the affidavit of Mr. Neuroth submitted by the State at the December 14, 2023 hearing was an insufficient substitute for polling the jury, as it amounts to improper hearsay evidence. La. C. E. art. 801, et al.

## CONCLUSION

Considering the foregoing, we remand this matter to the district court, which is ordered to conduct further proceedings involving each juror to ascertain whether the verdicts reached at trial were unanimous.

**REMANDED.**

**STONE, J., dissents with written reasons.**

I respectfully dissent and would vacate the defendant's convictions and sentences for second degree murder and conspiracy to commit second degree murder and remand the matter for a new trial.

Since the landmark decision by the United States Supreme Court in *Ramos v. Louisiana*, 590 U.S. 83, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020), declared non-unanimous juries unconstitutional, this trial court has, at least three times, failed to align its instructions with the newly established constitutional standard and has *repeatedly* instructed juries that ten votes were required to reach a verdict. First, in *State v. Hicks*, 55,010 (La. App. 2 Cir. 5/10/23), 361 So. 3d 1213, the trial court instructed the jury as follows:

> The law requires that at least 10 of you must agree on the same verdict before you can arrive at a verdict. Before you retire, the Court will hand you a form for each count charged, which each contains a responsive verdict that I have just mentioned. At least 10 of you must agree on the same verdict and that verdict must and can only be one of those listed on the form handed you for each separate charge. When at least 10 of you have agreed on the same verdict for each charge, your foreperson shall give the verdict on the form as those words appear on the form.
> . . .
>
> Ten of you must agree on whatever verdict it is for count 1 and count 2.
>
> . . .
>
> Once you all have done that, that means that 10 of you have agreed, at least 10 have agreed on the verdict for count 1 and count 2.

A second time in *State v. Fussell*, 55,497 (La. App. 2 Cir. 2/28/24), 381 So. 3d 899, the trial court instructed the jury, "[t]he law requires at least 10 of you must agree on the same verdict before you can arrive at a verdict … when at least 10 of you have agreed on the same verdict for each charge, your foreperson shall write the verdicts on the forms as those words appear

1

on the forms." In the matter *sub judice*, the trial court provided incorrect jury instructions, *yet again*, and stated that "the law requires that at least 10 of you must agree on the same verdict before you can arrive at a verdict."

Jury instructions, by their very nature, set the tone for jury deliberations. By instructing the jury that only 10 members were required to reach a verdict, the trial court effectively undermined the foundation of jury unanimity in both our federal and state constitutions. La. Const. art. I, § 17. Regretfully, when errors of this magnitude deviate from constitutional mandates, the integrity of the trial process is compromised. Considering the gravity of the errant jury instruction and its direct contradiction with the precedent set forth in *Ramos*, *supra*, it is imperative that we uphold the defendant's right to a fair trial by ordering a new one. To do otherwise would be to disregard the solemn duty to uphold the constitutional rights of *all* individuals within our legal system. While I acknowledge the Louisiana Supreme Court opinion in *State v. Hicks*, 23-00969 (La. 2/06/24), 378 So. 3d 743, I agree with the dissent by Justice Griffin.